UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| **GLORIA WARD,** | Case No. |
| **AND** | Judge |
| **SELWYN WARD,** | **COMPLAINT WITH JURY DEMAND** |
| **AND** | |
| **SELWYNA WARD, Individually and as Next Friend and Mother of H.W. and R.W., minors,** | |
| Plaintiffs, | |
| V. | |
| **SECURITAS SECURITY SERVICES USA, INC.,** | |
| Agent: National Registered Agents, Inc.<br>         306 W. MAIN STREET<br>         SUITE 512<br>         FRANKFORT, KY 40601, | |
| **AND** | |
| **NEWPORT ON THE LEVEE, LLC,** | |
| Agent: CORPORATION SERVICE<br>         COMPANY D/B/A<br>         CSC-LAWYERS<br>         INCORPORATING SERVICE<br>         COMPANY<br>         421 WEST MAIN STREET<br>         FRANKFORT, KY 40601 | |
| **AND** | |
| **JOHN AND JANE DOE SECURITY GUARDS 1-5,** | |
| Agent: CORPORATION SERVICE<br>         COMPANY D/B/A | |

| | |
|---|---|
| **CSC-LAWYERS INCORPORATING SERVICE COMPANY**<br>**421 WEST MAIN STREET**<br>**FRANKFORT, KY 40601**<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

The Plaintiffs, the Ward family, Gloria Ward, Selwyn Ward, and Selwyna Ward for her minor children H.W., and R.W., for their complaint against the Defendants, Securitas Security Services USA, Inc., Newport on the Levee, the City of Newport, Kentucky, and John Doe, Unknown Security Guard, state the following:

## JURISDICTION AND VENUE

1. This action is brought to redress grievances protected by the United States Constitution by 42 U.S.C. Chapter 21, 42 U.S.C. § 1981, and state law claims. This court has jurisdiction over these matters under 28 U.S.C. § 1331, and 28 U.S.C. § 1343. This Court has supplemental jurisdiction of the State law claims under 28 U.S.C. § 1367, and the doctrine of pendant jurisdiction

2. This Court is the proper venue for this matter under 28 U.S.C. § 1391, because the events giving rise to this action took place within this judicial district.

## INTRODUCTION

3. Plaintiffs incorporate by reference every allegation in the paragraphs above.

4. At all times relevant, the Plaintiffs, the Ward family, were African American residents and citizens of the State of Ohio, County of Hamilton, and citizens of the United States of America.

5. This complaint arises out of events that occurred in Campbell County, Kentucky.

6. Defendant, Securitas Security Services USA, Inc. ("Securitas") is a privately owned nationwide firm providing security services at Newport of the Levee.

7. Defendant, Newport on the Levee ("Levee") is a private company operating the Levee as a public accommodation, an entertainment and retail complex, in Newport, Kentucky. The Levee contracts with Securitas, as its agent, providing security for the Levee.

8. Defendant, John and Jane Doe Security Guards, are unknown security guards employed, at all relevant times, by Securitas, who worked at the Levee, in Newport, Kentucky.

## FACTUAL ALLEGATIONS

9. Plaintiffs incorporate by reference every allegation in the paragraphs above.

10. On December 15, 2012, the Ward family drove from their home in Cincinnati across the river to the Levee in Newport, Kentucky.

11. The mother, Selwyna Ward dropped off her four children for a night of entertainment at the Levee.

12. Her children are H.W. and R.W., thirteen year old twins, and their adult siblings, nineteen year old Gloria, and twenty year old Selwyn.

13. The siblings arrived early to buy tickets for a movie that they believed might sell out.

14. Many people were at the Levee that night, where AMC has twenty theatres. The crowd was predominately white.

15. While the Ward siblings were waiting, they shopped and played arcade games.

16. Gloria Ward bought a phone case and lip gloss from Claire's, while her siblings waited out front.

17. Then all at once, they were accosted by security. The uniformed security guard, a white man, wanted to know who they were and what they were doing.

18. The man said Security was concerned about a problem with theft at Claire's. Gloria said she had bought something at Claire's, and said she had her receipt. The security guard did not want to see it.

19. Instead, he said everyone needed to come with him. The siblings knew they had not stolen anything, and complied with the order to go with the officer in uniform.

20. The security guard herded them into a coffee shop to question them. He also said they would have to stay and be photographed.

21. The security guard said this was done pursuant to the Levee's policy.

22. One of the twins asked to call his mom. The officer said he could not. None of the siblings felt like they could leave, or that they could do anything other than what the officer told them to do.

23. The security guard told them that it was the Levee's policy to stop kids, register them, and take their pictures. The guard photographed them one at a time, adults included, while they were all held in the coffee shop.

24. Other Levee patrons stopped to stare at them. A white school friend of the twins saw them, and said later that he wondered what they had done wrong to be treated so.

25. There were lots of other children and adults there that night, mostly white, and the siblings did not see or know anyone else subjected to detention and having their mug shots taken, like they were.

26. After being held for about twenty to thirty minutes, they were let go to go to their movie.

27. After the movie, one of the siblings called their mother to come and get them.

28. While they were waiting for their ride, Security accosted them again. This time the officer said that now that they had had their names and pictures taken they were not allowed to come to the Levee for thirty days.

29. Security told them they were banned from the Levee for thirty days, and that they would be arrested for criminal trespass if they came back.

30. The siblings again protested that they had done nothing wrong. The security officer said he did not care. The security officer told them that they had to leave and not to come back.

31. The siblings waited outside. They left as soon as their mother got there.

32. They told her that they had been arrested. They were all very distraught. They said that they had been stopped and booked by the police.

33. They said that they were informed that they were not welcome at the Levee, and told not to come back or they would be arrested.

34. In fact, Security cooperates with police which arrest banned people.

35. The adult siblings told their mother that the twins had been well behaved and under their eyes. They said the officer had not accused any of them from stealing from Claire's or doing anything wrong at all.

36. The siblings all said that Security told them it was their policy to detain, register, and photograph certain kids. The officer photographed them all.

37. They said security told all of them, including the adults, not to come back, but never said they had done anything wrong. Again Security said this was according to the posted policy.

38. The Ward family knows of no reason why they were treated differently than other law abiding children and adults at the Levee that night, other than the fact that they were black.

39. The Ward family was very upset by what happened.

40. None of the siblings had ever been in trouble with uniformed and badged authority, what they thought was the law, before.

41. Both twins had headaches and upset stomachs attributable to this incident. H.W. has reoccurring nightmares of being chased by police dogs.

42. All the family has had their faith in authority shaken. They are afraid of the police, which did not use to be the case.

43. They are now afraid of being arrested again for no reason, or for the reason of being black.

44. They are all afraid to, have not, and do not intend to go back to Newport or the Levee.

## CAUSES OF ACTION
## COUNT I FALSE IMPRISONMENT

45. Plaintiffs incorporate by reference, each and every allegation in the paragraphs above.

46. Securitas, and the Levee, through their agent John Doe, and John Doe, personally, unlawfully restrained the Ward siblings without consent or legal justification.

47. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as if fully re-written here, and further states:

48. Plaintiffs were detained by Security on December 15, 2012.

49. Security held Plaintiffs at the coffee shop and did not allow Plaintiffs to leave.

50. Security questioned and took photographs of Plaintiffs.

51. When Plaintiffs asked to call their mother because two of the Plaintiffs were only 13, Security refused and told them they had to stay where they were.

52. The detainment of Plaintiffs was unreasonable.

53. Security claimed the reason for detainment was suspected theft from Claire's, but Claire's did not suspect Plaintiffs of theft.

54. When Plaintiff Gloria Ward offered to show her receipt, Security refused and continued to hold Plaintiffs against their will.

55. The Plaintiffs were damaged as a result of false imprisonment.

56. Plaintiffs had physical symptoms of headaches and upset stomachs after the events.

57. Plaintiffs are filled with fear, anxiety, and panic entering any store now because they are afraid of again being falsely imprisoned.

## COUNT II FALSE ARREST

58. Plaintiffs incorporate by reference, each and every allegation in the paragraphs above.

59. Securitas, and the Levee, through their agent John Doe, and John Doe, personally, improperly asserted legal authority to unlawfully restrain their victims, the Ward siblings.

60. The Security guard John Doe represented himself to the Plaintiffs as having the authority to confine them, by telling them they could not leave.

61. The Ward siblings submitted to the arrest and were imprisoned

62. The arrest was improper, because the actor and agent imposing the confinement was not privileged under the circumstances.

63. Security guards at the Levee have no authority to make arrests.

64. The Plaintiffs were damaged as a result of the false arrests.

65. The Plaintiffs suffered humiliation and embarrassed due to the actions by John Doe, personally, and as an agent of Securitas and the Levee.

66. The Plaintiffs have suffered anxiety, fear, and panic when entering other shopping facilities as a result of the events of December 15, 2012.

**COUNT III INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

67. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above.

68. Defendants' actions, through their agent John Doe, and John Doe, personally, were intentionally inflicted upon Plaintiffs and were so outrageous as to cause Plaintiffs extreme emotional distress.

69. Security acted with the purpose of detaining Plaintiffs.

70. Security detained, questioned, photographed, and banned Plaintiffs for 30 days due to their race.

71. Security's actions on the evening of December 15, 2012 caused the Plaintiffs embarrassment, humiliation, fear, and anxiety.

72. Plaintiffs were publicly detained, questioned, and photographed for all to see causing them embarrassment and humiliation.

73. Plaintiffs have experienced nightmares of police harassment since the incident.

74. Plaintiffs now have feelings of anxiety, fear, and discomfort every time they enter a store.

**COUNT IV DISCRIMINATION IN PUBLIC ACCOMODATIONS IN VIOLATION OF 42 U.S.C. CHAPTER 21, SUBCHAPTER II, AND K.R.S. 344.120**

75. Plaintiffs incorporate by reference every allegation in the paragraphs above.

76. The Levee is an entertainment complex open to the public. It contains, among others, attractions, restaurants, bars, retail stores, a game arcade, and twenty movie theatres. Interstate travelers use the services and facilities available.

77. It is a public accommodation under the law, 42 U.S.C. § 2000a.

78. Plaintiffs' detainment and thirty day ban from the Levee that resulted from Defendants' actions were a denial of the full and equal enjoyment of the facilities and services available to others at the Levee on account of discrimination, because of their race.

79. Defendants' actions violated 42 U.S.C. Chapter 21, Subchapter II, and K.R.S. 344.120.

80. Plaintiffs were damaged by Defendants' acts in violation of their civil rights.

### COUNT V- VIOLATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §1981

81. Plaintiff incorporates by reference every allegation contained in the paragraphs above.

82. The Defendants, through their actions violated or caused to be violated Plaintiffs' rights secured by the United States Constitution.

83. The Defendants' actions violated 42 U.S.C. § 1981.

84. Plaintiffs are each African American.

85. Plaintiffs belong to the statutorily protected group of persons due to their race.

86. Plaintiffs were treated differently than the white customers.

87. Plaintiffs were behaving and patronizing the stores in Newport of the Levee.

88. Plaintiffs were stopped by Security due to their race.

89. Security claimed to have stopped Plaintiffs because of a suspected theft from Claire's, but Claire's did not suspect that Plaintiffs had stolen anything from the store.

90. When Plaintiffs were stopped they were unable to patronize any of the stores and therefore their right to create contracts with the stores was infringed upon.

91. Plaintiffs were told by Security that they were banned for 30 days, therefore infringing on Plaintiffs right to make contracts with any of the stores in Newport on the Levee for 30 days.

92. The actions of Defendants through their agent, John Doe, and John Doe, personally, caused embarrassment and humiliation to Plaintiffs, as well as infringed on their contractual rights.

## PROVISIONS OF 42 U.S.C. § 1988 FOR ATTORNEY'S FEES

93. Plaintiffs incorporate by reference every allegation in the paragraphs above.

94. Defendants violated Plaintiffs' civil rights.

95. Defendant brought this action to enforce the provisions of 42 U.S.C. § 1981.

96. Therefore, the attorney's fee provisions of 42 U.S.C. § 1988 apply, and the court in its discretion should award Plaintiffs a reasonably attorney's fee as part of the costs.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully request judgment in favor of the Plaintiffs and against Defendants on all counts for:

1. Compensatory Damages;
2. Punitive Damages;
3. Injunctive Relief;
4. A reasonable attorney's fee;
5. Costs and expenses;
6. Any and all other relief to which they may be entitled.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues triable to a jury in this matter.

                                Respectfully Submitted:

                                /s/ Eric C Deters_____
                                Eric C. Deters
                                Eric C. Deters & Partners PSC
                                5247 Madison Pike
                                Independence, KY 41051
                                Phone: (859) 363-1900
                                Fax:    (859) 363-1444
                                Email: eric@ericdeters.com